FILED
2004 JUL 15 AM 8:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEBRA D. HALL,

    PLAINTIFF,

v.                                              CASE NO.: CV-03-J-1181-S

CITY OF ALABASTER,

    DEFENDANT.

ENTERED
JUL 14 2004

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 23), evidence in support of said motion, and memorandum in support of its motion (doc. 24), to which the plaintiff failed to respond.[1] Having considered the pleadings, evidence and memorandum of the defendant, the court finds as follows:[2]

### I. Factual Background

Plaintiff sued her past employer under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981 for gender discrimination, and under the Equal Pay Act of the Fair Labor Standards Act (EPA), 29 U.S.C. §§ 206(d)(1), *et seq.* The plaintiff

---

[1] Pursuant to this court's Scheduling Order entered July 17, 2003, the deadline for dispositive motions was June 24, 2004. The defendant timely filed its motion on that date. Under Exhibit A to the court's Scheduling Order of July 17, 2003, the plaintiff had fourteen (14) days to respond to the defendant's motion. Thus, the plaintiff's deadline to respond was July July 8, 2004.

[2] Defendant requested oral argument. Being of the opinion oral argument would not substantially assist the court, said request is hereby **DENIED**.

25

thereafter conceded that her claim under 42 U.S.C. § 1981 was due to be dismissed, and the court ordered accordingly (doc. 8). The court also dismissed the plaintiff's claim under the Equal Pay Act (doc. 17). The sole claim remaining before the court is for discrimination based on the plaintiff's gender under Title VII.

In the light most favorable to the plaintiff, the court finds the facts of this case to be as follows:

The plaintiff was employed by the defendant city as a Public Safety Dispatcher from July 3, 1994 until April 5, 2002. Complaint, ¶ 6. She was assigned to the position of Community Resource Officer ("CRO") from 1998 until May, 2001. Plaintiff depo. at 132-133. In May, 2001, plaintiff's immediate supervisor, Lieutenant Eddie Lovelady, reassigned the plaintiff to the communications office to train new dispatchers. Complaint, ¶ 11; plaintiff depo. at 133-134, 237. The plaintiff understood this assignment to be temporary and for the purpose of training new hires. Plaintiff depo. at 133-134. The plaintiff alleges that the CRO position was thereafter filled by males and that the males who filled this position were paid at higher police officer rates while the plaintiff continued at her dispatcher rate while working as the CRO. Complaint, ¶ 12; amendment to Complaint, ¶¶ 2, 3-5. However, a female was also placed in the CRO position after the plaintiff. Lovelady depo. at 36.

In October, 2001, the plaintiff requested that she be allowed to pursue other employment in her free time. Complaint, ¶ 14. The plaintiff asserts that unfair limitations were placed on approval of her request while a male with less seniority was allowed to pursue part-time employment without the same limitations. Complaint, ¶ 16. However, plaintiff held numerous part-time jobs while employed by the defendant. Plaintiff depo. at 119-124.

In January, 2002, the plaintiff's work schedule was changed from day shifts Monday through Friday to night shifts Saturday through Wednesday. Complaint, ¶ 13; plaintiff depo. at 127. Plaintiff believed this shift assignment violated the defendant's regulations on seniority and shift assignments. Complaint, ¶ 13. However, Lovelady testified that the defendant considered seniority in making shift assignments, but it was not a deciding factor. Lovelady depo. at 23, 65. Of the dispatchers, the plaintiff believed she was second in seniority to Alice Tolbert, who worked the day shift. Plaintiff depo. at 126, 130. Amy Moore, who was immediately below the plaintiff in seniority, worked the evening shift.[3] Plaintiff depo. at 132. The other four dispatch employees were probationary. *Id.*, at 132.

---

[3] All of Amy Moore's employment time was as a dispatcher. Plaintiff depo. at 132. Because the plaintiff worked for the defendant, left and came back, Moore was actually senior to the plaintiff. Lovelady depo. at 29-30.

The plaintiff complains that male dispatchers hired after her were given more desirable work schedules. Complaint, ¶¶ 17, 19. On April 5, 2002, the plaintiff resigned from her position with the City of Alabaster to begin other employment.[4] *Id.*, ¶ 21; plaintiff depo. at 33. Her last day at work was April 1, 2002. Plaintiff depo. at 112. The plaintiff began employment with the Shelby County Sheriff's Office on May 5, 2002.[5] Plaintiff depo., at 10.

On March 20, 2002, prior to leaving her employment with defendant, but after she had already accepted employment with the Shelby County Sheriff's Office, the plaintiff filed a grievance with the defendant's Personnel Board.[6] Plaintiff depo. at 74, 138. The plaintiff was aware that the defendant had a grievance procedure, but she did not follow it before then. *Id.*, at 75. The plaintiff waited to file a grievance because the standard operating procedures ("SOP's") for the Alabaster Police department stated she should try to resolve her complaints about being assigned to the night shift within the department. *Id.*, at 77, 138. However, she did not follow the procedure set forth in the SOP's either. *Id.*, at 220, 222-223. Although the grievance

---

[4] Records from the Shelby County Sheriff's Office show plaintiff's date of hire as April 1, 2002. Defendant exhibit 5 at 9.

[5] The plaintiff had applied for this position on December 5, 2001. Plaintiff depo. at 25; defendant exhibit 5 at 23-24.

[6] The plaintiff had been through a written evaluation, polygraph, drug screen, physical and a background check for employment with the Shelby County Sheriff's Office by that date. Defendant exhibit 5 at 12, 18-22, 32-44, 46-47, 57-63.

procedure stated she had ten days to file a grievance, she did not do so because when she learned about the time limitation, the ten days had already passed. *Id.*, at 225.

In December, 2001, the plaintiff spoke with Lovelady about moving her from the night shift, and he said he would attempt to accommodate her request. Plaintiff depo. at 78, 150; Lovelady depo. at 32. She intended her March 20, 2002 grievance to serve as an appeal of her shift change by Lovelady in December, 2001. Plaintiff depo. at 154. The day after she filed her grievance, Lovelady arranged to discuss it with the plaintiff. The plaintiff recorded this conversation, although she knew this was a violation of rules for which she could be terminated. *Id.*, at 177-178. To appease the plaintiff, Lovelady offered her a different shift, but she turned it down because it was not based on seniority. Plaintiff depo. at 182, 186; Lovelady depo. at 87. The plaintiff did not follow up on her grievance after that because she left her employment with the defendant. Plaintiff depo. at 154-155, 186-188. She admits that regardless of what action the Personnel Board took on her grievance, she was going to resign. *Id.*, at 188.

The plaintiff also complains that Lovelady refused the plaintiff's request to be off on March 13, 2002. Plaintiff depo. at 83. However, most of her requests for days off were accommodated. *Id.*, at 84, 172-173. She also complains that in October, 2001, she had to take 45 minutes sick leave when she was 45 minutes late to work.

*Id.*, at 209, 212. Lovelady stated he would let someone be late once or twice, but by the third occasion, he required leave be used. Lovelady depo. at 47. According to him, the occasion about which plaintiff complains was the third time she was late. *Id.*

The plaintiff agrees that, as Chief of Police, Chief Oliver had the discretion to return the plaintiff to dispatch and assign shifts. Plaintiff depo. at 156, 161. Her complaint was that in assigning her to night shift, the seniority policy in the SOP's was not followed.[7] *Id.*, at 156. She agrees that the way the schedule was done, a senior person was on each shift. *Id.*, at 158. The plaintiff did not want Amy Moore moved from the evening shift. Rather, she thought Johnny Thacker or Bret Cooley, both probationary employees, should have been placed on night shift so the plaintiff could work days with Alice Tolbert. *Id.*, at 157-160. The plaintiff agrees that to accommodate her, the night shift would necessarily have only probationary employees. *Id.*, at 238. The defendant tried to place one senior dispatcher on each shift. Lovelady depo. at 37. The plaintiff agrees that at no time was her pay or benefits reduced, and her opportunities for advancement did not change. Plaintiff depo. at 248.

---

[7]She apparently complains about being removed as the Resource Officer as well. Plaintiff depo. at 209.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than

simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

### III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56(e). The court must still find that summary judgment is appropriate from the pleadings and the evidence. However, " the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims.

Plaintiff asserts that the above facts constitute sex discrimination. As the court can find no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. This court must apply a three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-1528 (11th Cir. 1997).

Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996). Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825.

The plaintiff can establish her prima facie burden of proof by showing that (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected classification more favorably. *Rice-Lamar v. City of Fort Lauderdale, Florida,* 232 F.3d 836, 842-43 (11th Cir. 2000), citing *Holifield v. Reno,* 115 F.3d 1555, 1562-63 (11th Cir.1997). The court has carefully read the pleadings and the defendant's evidentiary submissions. The plaintiff meets the first two elements of her *prima facie* case. However, the court finds no evidence of an adverse employment action or that similarly situated male employees were treated more favorably. The only two complaints of the plaintiff presented in evidence are her reassignment to the dispatcher's office and the shift to which she was assigned.[8] The plaintiff presented no evidence that either of these actions worked a "serious and material change in the terms, conditions or privileges of employment." *See Davis v. Town of Park Lake, Fla.,* 245 F.3d 1232, 1239-40 (11th Cir.2001). Even if the plaintiff established these actions were indeed "adverse," the defendant presented evidence that its only three tenured dispatchers were female. The plaintiff's assertion less senior males were given more favorable shifts does not help plaintiff meet her prima facie

---

[8]While the plaintiff alleged she was paid less than male employees as a resource officer, replaced by a male as a resource officer, denied permission to work in other part-time employment, and made to take 45 minutes leave when males were not, the plaintiff has presented no evidence of any of this allegations.

case, because they were not similarly situated. Defendant had three dispatchers who were not probationary, and they were all women. Lovelady depo. at 29, 32, 67, 94-95.

Additionally, even if the plaintiff could make out a prima facie case, the defendant presented the non-discriminatory reasons for its actions of that it was short staffed in its dispatch office and wanted tenured experienced dispatchers on each shift, which the plaintiff failed to rebut. Because plaintiff has failed to present evidence that a genuine issue of material fact on each element of her case remains, the court is of the opinion that the defendant's motion is due to be granted on all counts of the complaint.[9] The court shall so rule by separate Order.

**DONE** and **ORDERED** this the 14 day of July, 2004.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[9]Although the defendant raises procedural bases for granting summary judgment in its brief, the court has not considered them, as the court finds the plaintiff cannot prevail on the merits of her case.